## Petts *versus* Gaw.

Where ground in Philadelphia was sold and described in the conveyance as bounded by adjoining lots and by a street: *Held*, that these boundaries governed where the quantity of ground within them exceeded by twelve feet the measurement mentioned in the conveyance.

THIS case was brought up from the Nisi Prius, *Philadelphia.*

It was an ejectment brought by Francis Petts against William Gaw, for *twelve* feet of ground on the south side of Queen street, between Second and Third street, by one hundred and seventeen feet in depth. The ground in dispute had been in the possession of plaintiff.

Both parties claimed under the devisees of Joseph Wharton, Sr., who died, seised of the square of ground between Second and Third, Queen and Christian streets, in which this lot was included.

By his will, he devised his real estate to his children, and directed a division to be made by certain persons to be appointed by his executors.

Partition was accordingly made; and, among other allotments, was one to *Mary Sykes*, for a lot marked No. 128 in a certain plan annexed to the deed of partition, and described as follows:—

"A certain lot of ground, situate in Queen street, beginning at the corner of lot No. 127, the property of W. Wharton, thence with his line southward one hundred and seventeen feet, to the corner of lot No. 149, the property of Charles Wharton, and another lot, No.

150, the property of Franklin Wharton ; thence westward with his line *nineteen feet nine inches,* to the corner of lot No. 135, the property of Robert Wharton, and the corner of another lot, No. 134, the property of Carpenter Wharton ; thence, with his line, northward, and the line of lots No. 133, 132, 130, and 129, the property of Isaac Wharton, Joseph Wharton, and Charles Wharton, one hundred and seventeen feet to Queen street, thence with a line of Queen street eastward nineteen feet nine inches to the place of beginning."

By certain mesne conveyances, this lot became vested in Robert W. Sykes, who, on the 21st of July, 1829, conveyed the same to *E. W. Cook,* in fee, by the following description :

"All that certain lot or piece of ground, situate on the south side of Queen street, between Delaware Second and Third streets, in the district of Southwark, and county of Philadelphia, marked in the plan of the partition of the real estate of Joseph Wharton the elder, deceased, *No.* 128, containing in front or breadth, on the said Queen street, nineteen feet nine inches, and in length or depth, south, one hundred and seventeen feet, be the same, in breadth or depth, more or less : bounded on the north by the said Queen street, on the east by a lot marked in the said plan No. 127, allotted to Wm. Wharton, on the south by the rear end of a lot marked in the said plan No. 150, allotted to Franklin Wharton, and on the west, by the rear ends of Third street lots." (Reciting the partition and allotment.) Reserving an annual ground rent of $44.44.

The lot was afterwards reconveyed, by the assignees of E. W. Cook, to Mr. Sykes, who, on the 28*th of January,* 1837, conveyed the same, by the same description as in the last-mentioned deed, to Petts, the plaintiff, in fee.   Consideration $750.   It was not sold by the foot, but for a gross sum.

Gaw, the defendant, claimed under the descendants of the devisees of Joseph Wharton the elder, by a subsequent deed which alleged that on a recent survey and measurement of the square of ground bounded by Queen street, &c., there was found to be an excess or overplus over and beyond the several parts and shares allotted under the partition of his estate.   Which overplus was the *twelve* feet in question.   The deed to Gaw was dated November 27th, 1840.

Among the grantors in this deed to the defendant Gaw, was Robert W. Sykes, the only child and legal representative of Mrs. Sykes, to whom the lot No. 128 was allotted.

The main question was, whether the twelve feet of ground in dispute was included in the allotment to Mary Sykes, which was conveyed to Petts.   Thus both in the original partition and in the deed to plaintiff the lot is described by metes and bounds.   Its western boundary is the rear end of the Third street lots.   There was no dispute as to the dimensions or boundaries of the Third street lots ; the defendant's claim was founded on the fact that plaintiff's lot was

found by measurement to be twelve feet wider than his deeds describe it.   The case was tried before BURNSIDE, J.

On the trial, *B. G. Mitchell* was called on part of the *plaintiff.* He produced a plan of the lots which he had made, and said Third street has been changed from what is laid down.   The streets, as on the plan of the Wharton estate, *never existed.*   There is an overplus of ground between Second and Third streets, of about twelve feet.   *The lots on the west side have lost about the same.*

Defendant's counsel called *Philip F. Snyder,* who said he was a regulator of the district, and proved that the plan which he produced was made from actual survey, in December 1847.   There is an overplus of twelve feet.   *It was said to be owing to a change in Third street.*   There was a *rumor* that it ran more to the west.   I measured the plaintiff's lot.   He has nineteen feet nine inches between fences.   He has a fence to the east.

The defendant's counsel then read in evidence the certificate of regulation, and the deeds from the heirs and legal representative of Joseph Wharton to the defendant, and the record of a former action of ejectment brought in the District Court, to the term of March 1841, by William Gaw, (the present defendant,) against Francis Petts, (the present plaintiff,) in which there was a verdict of judgment for the plaintiff, and a *habere facias,* issued and executed.

The judge charged the jury as follows :—

" The counsel of both parties agree that the title to the lot in question was in Joseph Wharton, under whom both parties claim. At his death, prior to 1790, he was the owner of a square in Southwark, bounded by Second and Third streets, and Queen and Christian streets.

" The square had been laid out in lots, and partitioned, in 1790, among his children under his will.   The lot in question was No. 128, and was assigned to his daughter, Mary Sykes, as you have heard.   The title to this lot is admitted to be in the plaintiff.   The dispute is about its *western boundary.*   In the partition it is described as No. 128, situate in Queen street, (the diagram handed to the jury,) beginning at the corner of lot No. 127, the property of William Wharton ; thence with his line southward 117 feet, to the corner of lot No. 149, the property of Charles Wharton, and another lot, No. 150, the property of Franklin Wharton ; thence westward with his line nineteen feet nine inches to the corner of lot No. 135, the property of Robert Wharton, and the corner of another lot, No. 134, the property of Carpenter Wharton ; thence with his line northward, and the line Nos. 133, 132, 130, and 129, the property of Isaac Wharton, Joseph Wharton, and Charles Wharton, 117 feet to Queen street, and thence with a line of Queen street, eastward 19 feet 9 inches to the place of beginning.

" It is true, the lot of the plaintiff only calls for 19 feet 9 inches on Queen street, but the partition calls for the lots running from

[Petts *v.* Gaw.]

Third street. These lots call for 91 feet 3 inches, and it is alleged that Third street was *changed,* and *shortened these lots;* of that fact no evidence has been given that the law will authorize me to place before you.

"The subsequent deeds recite the partition. In whom were the twelve feet between the measurement called for and the lots running from Third street? The lots running ninety-one feet three inches were monuments and boundaries of this lot, or twelve feet in controversy. The partition which describes it, bounds this lot on the line of lots, Nos. 129, 130, 131, 132, and 133. The law is, that in the construction of a deed, we are never to go out of the deed, unless there be contained in it some latent ambiguity. Our law has been invariably held, that in a case of a variance in the description of land between monuments and the length of lines, the monuments are to govern. This is so well settled as a rule of property, that no court ought to shake it. I need only refer to two cases: Howe et al. *v.* Bass, 2 *Mass. R.* 382, and recognised by the Supreme Court in Hall *v.* Powell, 4 *Ser. & R.* 462. In the former case it was held:—Lands conveyed by a deed are described as measuring forty-five feet, and as bounded by certain known and visible monuments. The distance between the monuments is sixty-five feet: the purchaser shall hold by the monuments, and not by the measure described. This was a writ of entry for lands, in Boston. In the latter case, Mr. J. Duncan says, 'In this State, the natural and artificial boundaries, the monuments described, are the boundaries of a survey, whatever may be the courses and distances expressed.' This, says that learned judge, is the common law of the land, and he adopts the Massachusetts rule of construction as to deeds. The plaintiff's deed calls for the rear end of the Third street lots.

"I instruct you that the twelve feet in controversy were within the plaintiff's title; that the other heirs of Joseph Wharton were divested by the partition, and that they had no interest in the lot to convey to Gaw.

"As to the former recovery, I agree it is strong persuasive evidence. In a doubtful case, it may turn the scale; but it is not conclusive. I am unable to discover that the statute of limitations has any bearing on either side, there not being evidence of actual, unbroken, adverse possession on either side for twenty-one years, which the statute requires.

"If the defendant had shown any change in the boundary of the lots called for, by the fixing of Third street, beyond rumor, or any change in their western boundary after the execution of the partition, it would have presented a subject for consideration. But as the case is presented to us, the law gives to the plaintiff all the land within the monuments mentioned and described in his title, &c."

The defendant's counsel excepted to this charge, and the judge sealed a bill of exceptions.

T 2

[Petts *v.* Gaw.]

The jury retired, and, after an absence of some hours, came again into court, and stated to the judge that they could not agree.

The defendant's counsel then asked the court to inform the jury that the boundaries of which he had spoken to them were such as were "*visible and permanent*," "and that the price paid by the plaintiff to Mr. Sykes was some evidence of the intention of the parties that only the nineteen feet nine inches were to pass;" but the judge refused to comply with the request: to which the defendant's counsel excepted.

The jury afterwards found for the plaintiff, whereupon the defendant's counsel moved for a new trial, for the reasons stated in the errors assigned.

The motion for a new trial was overruled, and the case certified to this court.

Error was assigned to the charge, and to the refusal to charge the jury as requested after they had returned into court.

The case was argued by *T. I. Wharton*, for Gaw, plaintiff in error. *Markland* and *D. P. Brown*, for defendant in error.

The opinion of the court was delivered February 15, 1851, by

ROGERS, J.—This case might be safely risked on the charge and the reasons given by the learned judge who tried the cause. In addition, however, to the authorities cited by him, may be adduced Cox *v.* Couch, 8 *Barr* 147, in which the principle which governs the case is expressly ruled. In that case it is decided to be a principle of construction, that when land is described by courses and distances, and also by calls for adjoiners, the latter, where there is a discrepance, invariably governs; and that the rule is as applicable to conveyances as it is to official surveys. By reason of imperfection of instruments, as well as inequality of surface and carelessness of assistants, extreme accuracy is not to be obtained by the compass and chain; while, on the other hand, calls for natural objects, or which is much the same, known and established lines, admit of perfect certainty. It must be remarked, the case cited explodes the distinction, if it ever existed, taken between natural objects and monuments on the ground, and calls for adjoiners. They are put on the same footing, and for the same reason that they admit of certainty, and therefore control courses, distances, and quantity. It is true, this rule may, as here, produce an apparent injustice; but in the main, it subserves, in an eminent degree, the purposes of justice. On this point may be cited Large *v.* Penn, 6 *Ser. & R.* 488; Glen *v.* Glen, 4 *Ser. & R.* 488; and Mann *v.* Pearson, 2 *Johns. R.* 40. In this connection, it is proper to say, that the same rules apply to partitions as to other conveyances.

Possibly, by showing the mistake, if any existed, the whole par-

[Petts *v.* Gaw.]

tition may be avoided; but as it now stands, we cannot perceive how the title derived from Mrs. Sykes can be affected. The lots allotted to her are bounded on the west by the rear ends of the Third street lots, which, of course, on the principle shown to be settled, includes the *locus in quo.* Had the mistake, if any, been corrected before the conveyance from Sykes to Petts, there would be something in the argument of the plaintiff in error. But it is difficult to perceive any good reason why her title should be impaired by subsequent conveyance of the heirs of Joseph Wharton to Gaw.

What effect competent proof of a change in the location of Third street would produce on plaintiff's title, I am not prepared to say; nor is it necessary, as I agree with the court, that such evidence was not given of that fact as entitles it to consideration. One of the witnesses says it has been changed, but he does not prove by what authority it was changed, how it was changed, or by whom. We have a right to call for more distinct and certain proof of this essential fact, before we would be justified in making it an element in the title to real estate. The evidence on this head is evidently an inference of the witness, drawn from the plain and undisputed fact that there was an overplus of ground. Snyder's testimony amounts to nothing, as he speaks of a rumor merely, that the street had been changed.

It is contended the court erred in refusing to instruct the jury, after they returned into court, that the boundaries, of which the judge had spoken in his charge, were such as were visible and permanent, and that the price paid by the plaintiff to Mr. Sykes was some evidence of the intention of the parties. Without adverting to the law that a judge is not bound, at the request of counsel, to explain a charge which is clear, plain, and explicit, it is sufficient to observe that, had he complied with the request, he would have committed a palpable blunder, in direct contradiction to his charge. The question was not whether the boundaries were visible and permanent, in the sense attached to them by the counsel for the plaintiff in error, but whether the call for adjoiners did not control (as it has been shown it did) the courses, distances, and quantity. What the price has to do with this question I cannot comprehend. The vendee of Sykes, Petts, purchased all the land contained within certain boundaries, for a gross sum, whether more or less. To that he was entitled, and to no more, without regard to the fact of whether it contained more or less than the parties supposed. That all the land included in those boundaries passes, has never been doubted. The cases referred to by the counsel of the plaintiff in error, are as between the vendor and vendee, affecting the purchase-money to be paid by the vendee. They do not affect this question.

                                        Judgment affirmed.