## PATRICK BLYGH v. J. A. SAMSON ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF McKEAN COUNTY.

Argued May 6, 1890—Decided January 5, 1891.

[To be reported.]

1. A contract, entered into in a mutual mistake as to an essential fact which formed the inducement to it, may be rescinded on discovery of the mistake, if the parties can be placed in their former positions with reference to the subject matter of the agreement.

2. If, however, by reason of something done under the contract before the mistake was discovered, it is impossible to restore the status quo, the injured party may have compensation in damages, as an equitable defence to an action on the contract, or to be recovered in a suit for them.

3. When the vendor of timber, before entering into a contract of sale, pointed out to the vendee certain lines on the ground, representing that they were the lines specified in his title deeds, the representation being material and the sale being founded on it, the fact that it was honestly made will not enable the vendor to profit by it, if untrue.

4. He who would avail himself of his own misrepresentation, even when it was unintentional, is as much open to an imputation of fraud, as if its falsity had been known to him: Tyson v. Passmore, 2 Pa. 122; and a vendor is as much affected by false representations made by a third person, acting for him and in his presence, whether honestly or fraudulently, as if made by himself.

(a) A written contract, conveying standing timber, described it as within certain lines. The parties were not shown to have had equal opportunities of knowing the location of the lines. The vendee testified that the vendor assured him, before he signed the contract, that they included the whole of certain specified timber. This allegation was denied by the vendor, but corroborated by his subsequent declarations testified to by others:

5. The vendee, showing that one third of the timber which, as he alleged, was represented to be included within the lines of the written description, was in fact, as afterwards discovered, outside those lines and on land of a third person, made defence against a proportionate part of the purchase money: The evidence was sufficient to authorize a verdict in accordance with his claim.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and Mc-COLLUM, JJ.

No. 83 January Term 1890, Sup. Ct.; court below, No. 161 February Term 1888, C. P.

On January 23, 1888, Patrick Blygh brought assumpsit against J. A. Samson and J. C. French, copartners as J. A. Samson & Co., upon a promissory note for $475, with interest, dated May 17, 1887, drawn by J. A. Samson & Co., and payable to the order of the plaintiff on January 2, 1888. The defendants pleaded non-assumpsit, payment and set-off.

At the trial on June 5, 1889, the plaintiff having proved and put in evidence the note sued on, the following matters relating to the defence set up against it, were shown:

In the spring of 1887, the plaintiff, being the owner of a tract of land in Ceres township containing fifty acres, under an unrecorded deed, dated January 26, 1886, from the executors of Charles Kernan deceased, proposed to sell to the defendants the timber standing thereon. Some time in April, the plaintiff and Samson, one of the defendants, met and went upon the land in company with Abel Hammond to inspect it. No one else was present. As Samson testified, the plaintiff then pointed out the boundaries of the land as being at a brush fence on the north; at or near the ridge of a hill on the east; at or near the "stub" of a tree on the south; and at the edge of a cleared field, belonging to Thomas Lynch, on the west. The plaintiff, testifying on his own behalf, denied that he pointed out any boundaries, and stated that, on the contrary, he told Samson on that occasion, that he did not know where they were, and that he had on two previous occasions made attempts to find them with the help of Thomas Lynch, but had failed each time. The plaintiff testified, further, that Hammond pointed out to Samson what were said to be some of the corners and lines of the property. Hammond was dead at the time of the trial.

While on their way home, after having finished the inspection, the plaintiff and Samson made a bargain, agreeing upon the sum of $950 as the price to be paid for the timber, one half to be payable in cash and the remainder by note. On May 17th, they met again at the plaintiff's house, to complete the transaction. Samson testified that the plaintiff then produced his deed for his timber tract, saying "This here is a description in this deed of my timber on King's run;" and on being asked by the witness whether that deed described the same timber he had shown to the witness on King's run, the

plaintiff replied, " It does ; I wouldn't deceive you ; " and that
the witness then said, " Very well; that is all I want."    The
plaintiff and his son testified that when the deed was handed
to Samson, the plaintiff said to him, " Here is the deed of the
lot, and you know as much about the line as I do."    The deed
had appended to it a plan of the land therein described.

Samson then drew up a written contract for the sale of the
timber from the plaintiff to the defendants, embodying there-
in the description by metes and bounds contained in the deed.
The subject of the sale, as stated in the contract, was all the
timber suitable for sawing, or needed for removing or manu-
facturing said sawing timber, upon a lot of land described as
in the deed, with the stipulation that the vendees should have
two years from the date of the articles for removing it, and the
right to erect mills, etc.    The consideration stated was $475
in hand and $475 payable on January 2, 1888.    The agree-
ment having been signed by the plaintiff and by Samson in
the name of the defendant firm, Samson paid to the plaintiff
$475 by a check, and gave to him the note in suit.

The defendants at once took possession, and commenced the
removal and manufacture of the timber upon the northern side
of the tract, working gradually toward the southern side of it.
At the close of the peeling season, and when nearly two thirds
of the timber included within the lines which, as the defend-
ants alleged, were pointed out to them by the plaintiff, had
been taken off, the men who were working on the tract were
notified that they were about to get over the southern line of
the tract and must stop.    The defendant French testified that
about six weeks before the maturity of the note he told the
plaintiff that the defendants had been notified that the lines of
the tract were not where the parties had understood them to
be, and that the plaintiff replied that he thought they were.
The testimony of several witnesses tended to prove that, about
the time when the note matured, the plaintiff admitted that
he had pointed out to Samson the " stub " as marking the
southern boundary line, and that he assured the defendants
that they had not yet cut and peeled more than half of the
timber on his lot.    A survey was made, however, for the pur-
pose of ascertaining definitely where the line was, and it dis-
closed the fact that the " stub " was nearly fifty rods south of

Charge of Court below.

the southern boundary of the land owned by the plaintiff, and
that about one third of the timber which the defendants thought
they were buying was on the land that did not belong to the
plaintiff. Samson testified that the defendants had sold the
timber and bark before they found out that the line did not
run where the plaintiff had represented it to be. Before the
bringing of the suit, the defendants tendered the plaintiff $200,
and this tender was renewed on the trial.

At the close of the testimony the court, MORRISON, J., 
charged the jury in part as follows :

This transaction is to be treated the same in law, so far as
the questions raised here are concerned, as though it were a
sale of the land upon which the timber stood. The principles
governing the case are not different. In Pennsylvania, where
one man sells or conveys land to another, and takes a note or
bond or obligation for the purchase money, the transaction is
considered closed; and ordinarily the seller is entitled to collect
his bond, or note, or obligation without any defence being
made to it, whether the bargain was a good or a bad bargain.
The seller, because it is discovered afterwards that the land
included more within its boundaries than they supposed, can-
not collect more than the price; and the purchaser, where it
is found to contain less, cannot ordinarily deduct from the
purchase price, when the contract has been closed by the con-
veyance and the giving of an obligation of this kind. So that,
ordinarily, the plaintiff would be entitled to collect the amount
of his contract or note without defence.

We are asked by the plaintiff to charge you:

3. If the jury believe from the evidence that the defendant
had the same facilities that the plaintiff had, to have ascertained
the boundaries previous to the making of the contract, and the
plaintiff having contracted in writing to sell them the timber,
etc., upon the land described in said contract, and the defend-
ants attempting to stretch the boundaries beyond those described
in the written contract, and the parties being evenly balanced in
their evidence, one for and the other against, in such case the
contract offered in evidence must prevail, the preponderance
being with the plaintiff, and the plaintiff is entitled to recover.

Answer : Answered in the affirmative, if you find that the

Charge of Court below.

plaintiff did not knowingly misrepresent the boundaries and thereby induce the defendants to enter into the contract.[1]

Defendants' counsel ask us to answer the following points:

1. If the jury believe that the timber was pointed out by the plaintiff as on his lot, and included in the sale, which was subsequently found not to be on the lot as described in the contract, and to which the defendants got no title, then the defendants are entitled to a reduction on the whole, in the proportion that the timber not on the lot bears to the whole amount pointed out and represented by the plaintiff as on his lot.

Answer: We cannot affirm this point as drawn. We say to you that if the plaintiff in bad faith pointed out timber that he knew or had good reason to know was not on his lot, and thereby induced the defendants to enter into a contract, this point would be correct. But if you should find from the evidence that the plaintiff did not know the lines and also that the defendant did not, but that they went there and looked over this land and were mistaken as to where the lines were; that subsequently the contract was made from the deed and that each party had equal facilities for correcting the error... was one, and no fraud or misrepresentation existed on the part of the plaintiff, then this point does not correctly state the law and they are not entitled to this reduction.[3]

2. It makes no difference whether the misrepresentations were mistakenly or fraudulently made by the plaintiff; if made by the plaintiff or any one for him in his presence, he is equally bound by such misrepresentations, and the defendants are entitled to a deduction on the whole price in the proportion stated in the first point.

Answer: Answered in the negative.[4]

\*    \*    \*    \*    \*    \*    \*    \*

Now that there may be no mistake, although I think we have fully instructed you upon the law, we will reiterate our view of the law in this case. If the plaintiff acted in bad faith by pointing out timber standing on land that he knew or had good reason to believe did not belong to him, and thereby induced the defendants to agree to pay a larger sum for the timber than they otherwise would have done, the defendants may in this action defend to such an amount as you find from the evidence they were injured by the bad faith of the plaintiff. [But, if

Arguments.

the contract was the result of a mutual mistake of the parties, without any fraud or bad faith on the part of the plaintiff, both parties having equal opportunities to correct the mistake before closing the transaction, the defence fails and your verdict should be for the amount of the note with interest.] [10]  If the contract was fairly entered into on the strength of the examination made by the parties of the land and timber and the deed to the plaintiff, without fraud or misrepresentation by the plaintiff, the defendants must pay their note whether they made a good or a bad bargain. . . . .

The jury returned a verdict for the plaintiff for $533.47.  A rule for a new trial having been discharged, judgment was entered on the verdict; whereupon the defendants took this appeal, assigning for error, inter alia :

1. The answer to the plaintiff's point.[1]

3, 4. The answers to defendants' points.[3] [4]

10. The part of the charge embraced in [ ] [10]

*Mr. E. R. Mayo,* for the appellants :

1. Samson was strongly corroborated by the plaintiff's declarations about the time the note fell due, as to what took place when the contract was made, and the plaintiff cannot escape the effect of his misrepresentations on the ground that he did not know they were false when he made them: McCall v. Davis, 56 Pa. 431; Tyson v. Passmore, 2 Pa. 122; Fisher v. Worrall, 5 W. & S. 478; Hunt v. Moore, 2 Pa. 105; 2 Parsons on Contracts, *786.  To attempt to avail himself of an unintentional misrepresentation is as much a fraud as if its falsity were known to him when he made it: Tyson v. Passmore, supra.  Especially is this true when the duty of knowing the truth of his statement is cast upon a party: Bispham's Eq., § 214; McCall v. Davis, supra; and it was Blygh's duty to know the location of his lines if he assumed to point them out. The purchaser having relied on the vendor's misrepresentations, it is a graceless answer to their claim to say that they might have tested the accuracy of the representations by an actual survey, before doing anything under the contract: Flagler v. Pleiss, 3 R. 345; McCall v. Davis, 56 Pa. 431.

2. Even when land has been sold and conveyed, the vendee

may defend, in a suit for the purchase money, to the extent of a failure of consideration arising from misrepresentations of the vendor at the time of the purchase: Stubbs v. King, 14 S. & R. 206; Pennock v. Tilford, 17 Pa. 456; McCall v. Davis, supra; Davis v. Sabita, 63 Pa. 90. But this was not a sale of land, it was a sale of standing timber, to be severed and removed within two years. It converted the timber into personalty, and when the boundaries had been pointed out upon the ground and the terms of the contract agreed upon, the timber vested in the defendants without the need of any writing to convey it, the subsequent writing being of no importance, except evidence of what the contract was. Hence the writing cannot be given the same conclusive effect between the parties that is given to a deed for land: Huff v. McCauley, 53 Pa. 206; McClintock's App., 71 Pa. 365. Moreover, the court improperly submitted the question whether the defendants had the same facilities as the plaintiff for ascertaining the boundaries, prior to making the contract. There is no evidence that they had any.

*Mr. E. L. Keenan* and *Mr. P. R. Cotter*, for the appellee:

1. Before the contract was put in writing, the deed for the lot containing its description, together with a map of it, was placed in the hands of Samson, and he then had equal facilities with the plaintiff to ascertain the location of the boundaries set forth in the deed. Samson wrote the contract himself, copying the description from the deed. It is not pretended that the defendants did not get all the timber upon fifty acres, as thus described. A contract for the sale of standing timber is governed by the same principles as one for the sale of the land on which the timber stands, and after it has been carried into execution, neither party has any recourse against the other, except for imposition or fraud: Rodgers v. Olshoffsky, 110 Pa. 147; F. & M. Bank v. Galbraith, 10 Pa. 490; Dickinson v. Voorhees, 7 W. & S. 353; Coughenour v. Stauft, 77 Pa. 191.

2. The question whether there was imposition, fraud or misrepresentation, was fairly submitted to the jury, and has been found against the defendants. The contract was put in writing, and the writing defines the subject matter of the sale. The case, we maintain, comes within the rule that the unsup-

Opinion of the Court.

ported oath of one of the parties to an instrument, is not suffi-
cient to defeat or to change it, when opposed by the oath of
the other party: Juniata B. & L. Ass'n v. Hetzel, 103 Pa. 507;
Phillips v. Meily, 106 Pa. 536; Jones v. Backus, 114 Pa. 120;
Ballentine v. White, 77 Pa. 27; Sower v. Weaver, 78 Pa. 443.
Samson is the only witness for the defendants as to what took
place at the execution of the contract. The writing, and
nothing else,•must stand as the authentic memorial of the con-
tract: 1 Greenl. Ev., § 275.

3. Previous conversations of the parties are of importance
only to ascertain whether there was any fraud or false repre-
sentation. If there was no fraudulent design on the plaintiff's
part, the defendants cannot rescind on the ground of mistaken
representations which turned out to be untrue, as they have
held on to the benefits of the contract as far as they could,
have made no offer of restoration, and by selling the timber
have disabled themselves from putting the plaintiff in statu quo:
Daggett v. Emerson, 3 Story 700; Babcock v. Case, 61 Pa.
427; Babcock v. Day, 104 Pa. 4; Wilson's App., 109 Pa. 606;
Wilson v. Cochran, 48 Pa. 107; Gates v. McLean, 70 Cal. 42;
McKeen v. Beaupland, 35 Pa. 488. We contend, then, that
even if the court was in error, and assigned a wrong reason for
its action, upon the facts in the case the judgment was right
and cannot be reversed: Thomas v. Mann, 28 Pa. 520.

OPINION, MR. JUSTICE McCOLLUM:

The note in suit was given for one half the price of timber
which the payee sold to the makers. The vendees allege that
their vendor had no title to one third of the timber which he
sold to them, and that they have paid or tendered the price of
the timber they received or acquired any title to under their
agreement with him. The vendor alleges that he was the owner
of, and that they have received, all the timber embraced in the
sale.

It is undisputed that the vendor owned a tract of land in
Ceres township, containing fifty acres; that he proposed to
sell to the vendees all the timber thereon suitable for sawing;
that, in company with one of them and for the purpose of mak-
ing a sale, he visited the tract to view the timber; that while
upon the tract or returning from it, he sold the timber to them

for $950, and that soon thereafter they paid one half this sum in cash, and gave their note for the balance. It appears from the evidence produced by the vendees that the vendor pointed out the timber he proposed to sell to them, and said that it was on his lot; that he did not go to any marked lines or corners, but that he designated their location, and these as represented by him enclosed the timber he had pointed out; that when the contract was reduced to writing the description of the lot was copied from his deed, and he was asked if that included the timber he had shown, and he replied that it did. It further appears from their evidence that when they had cut and peeled nearly two thirds of the timber which they supposed they purchased, they were notified that the balance of it was not on their vendor's lot; that they informed him of this, and he assured them that the lines were where he had represented them to be, and that they had not yet cut and peeled more than half the timber on his lot. A subsequent survey, however, demonstrated that the notice they had received was substantially correct.

In answer to this evidence, the vendor says that he did not point out the lines and corners of his lot, and that he did not know where they were; that the written contract must govern, and, as the vendees have received all the timber described in that, their defence fails. It does not appear that the vendees ever saw this lot or any map or description of it, before the day of the sale, but the vendor received his deed for it sixteen months before, and he says that he was upon the lot twice with Thomas Lynch to search for the lines, and that they could not find them. The learned judge instructed the jury that the case turned on the good faith of the vendor in making the sale, that his honest mistake in pointing out the lines, or a mutual mistake of the parties respecting their location, would not constitute a defence to the note. In this we think he erred. The vendor sold the timber he pointed out, and one third of it he had no title to. The mistake was material and the sale was founded upon it. If it was an honest mistake, the vendor cannot gain nor his vendees lose by it. It was said by Chief Justice GIBSON in Tyson v. Passmore, 2 Pa. 122, that " he who would avail himself of his own misrepresentation, even where it was unintentional, is as much open to an imputation of fraud as if its falsity had been known to him."

Opinion of the Court.

A contract entered into in a mutual mistake as to an essential fact which formed the inducement to it, may be rescinded on discovery of the mistake, if the parties can be placed in their former position with reference to the subject matter of it. But if this is not possible by reason of something done under the contract before the mistake was discovered, the injured party may have compensation in damages, as an equitable defence to an action on the contract, or to be recovered in a suit for them.

There is no evidence to justify an inference that the parties to this sale had equal opportunities of knowing the boundaries of the lot. The vendor owned it more than a year before he sold the timber, and his deed contained a description from which its lines could have been readily located by a surveyor. The vendees first saw this description when they met to put the contract in writing, and he then assured them that it included the timber he had pointed out. We think the evidence is sufficient to authorize a finding in accordance with the claim of the vendees. It is true that the only persons on the lot, on the day of the sale, who testify to what was said and done there then, are the vendor and J. A. Samson, one of the vendees. Hammond who was with them is dead. It is impossible to reconcile the testimony of these witnesses. But the declarations of the vendor, as testified to by a number of persons, contradict him and corroborate the statement of Samson. Then, there are the inherent probabilities of the transaction, viewed in the light of the undisputed facts, to assist in the interpretation of the direct testimony.

If Hammond, acting for the vendor and in his presence, made false representations respecting the boundaries, whether honestly or with fraudulent intent, the latter is as much affected by them as if made by himself. But, in either case, the representations are not available as a ground of defence or claim, unless they relate to a material fact and were an inducement to the purchase.

To the extent that the instructions complained of are in conflict with this opinion the specifications are sustained.

> The judgment is reversed, and a venire facias de
> novo is awarded.