**MORRIS BROTHERS LUMBER COM-PANY, Appellant,**

v.

**David E. EAKIN, Frances B. Eakin, John L. Eakin, Jr., Also Known as Lester Eakin, and Mary Louise Eakin.**

**No. 12652.**

United States Court of Appeals
Third Circuit.

Argued Nov. 21, 1958.

Decided Jan. 7, 1959.

Albert E. Acker, Sharon, Pa. (Wiesen, Cusick, Madden, Joyce, Acker & McKay, Sharon, Pa., on the brief), for appellant.

Robert M. Dale, Franklin, Pa., for appellee.

Before BIGGS, Chief Judge, and MARIS and McLAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the plaintiff from a judgment entered by the District Court for the Western District of Pennsylvania for the defendants n. o. v. and from an order in the alternative granting a new trial if the judgment n. o. v. should be reversed on appeal. The judgment was entered in a suit which the plaintiff, Morris Brothers Lumber Company, had brought against the defendants, David E. Eakin and John L. Eakin, Jr., who are brothers, and their wives, Frances B. Eakin and Mary Louise Eakin, respectively, for damages of $20,698.30 resulting from a shortage of 172.089 acres

in a tract of timber, known as the Copperhead tract, which the plaintiff had purchased from the defendants and which had been represented to contain about 291 acres of land. In a second count, the plaintiff asserted fraud on the part of the defendants in misrepresenting the actual number of acres contained in the tract, claiming a loss of profits of $34,755.39. Jurisdiction was invoked by virtue of the diversity of citizenship of the parties. The law of Pennsylvania governs the rights of the parties to the litigation.

The controversy arises out of the following facts: The father of defendants David E. Eakin and John L. Eakin, Jr. had acquired in 1908 and 1913 a tract of land known as the Kennerdale tract, containing 927.85 acres, located in Clinton Township, Venango County, Pennsylvania, of which the Copperhead tract was a part. As devisees under their father's will the Eakin brothers became the owners of this land upon his death in 1951. In the course of administering his estate, of which the two brothers were executors, a forestry consultant at their request prepared a timber appraisal report under date of December 11, 1951. The total area of the Kennerdale tract was divided into three areas labelled "AB", "CD" and "EG". The portion known as the Copperhead tract was designated as "EG" and marked as containing 291 acres.

A few years before entering into the transaction which culminated in the conveyance to the plaintiff of the timber contained in the Copperhead tract, Richard D. Morris, president of the plaintiff company, made inquiries concerning the purchase of timber owned by the Eakin brothers but was informed by Marriott C. Dick, a purchasing agent for another lumber company, that they were not interested in selling. It appears that subsequently on November 12, 1954 David Eakin wrote to Dick offering to sell a "tract of timber" consisting "of 260 acres,—more or less". Dick visited Eakin who drew a sketch showing the boundaries of the property he proposed

to sell which corresponded with the boundaries shown by Eakin to the plaintiff's officers and employees at a later date. The company by whom Dick was employed did not purchase the timber. Shortly thereafter Dick arranged to go upon the land with Morris.

On December 6, 1954 Dick, Morris and George J. Hepfl, plaintiff's foreman, went upon the land to view the timber. When they arrived at a powerhouse on the boundary of the tract Morris left them and went into the midst of the timber in order to determine whether it was as thick in the center as it was around the edges, and to determine whether or not the "dollars' worth of timber" was there. This he determined by estimating the number of board feet that he thought it would cut per acre and multiplying it by the number of acres and then multiplying that by the average market price at that time for timber. He had been informed by Dick that the tract contained 300 acres. He was in the woods approximately three hours. As he went through the timber he concluded that it would produce between 15,000 and 20,000 board feet per acre. He concluded that the timber "was worth $8.00 per thousand on the stump" and "averaging 15,000 to the acre would make it worth $120 per acre" or $36,000. Oil and gas wells were located on the tract as well as power stations.

Dick and Morris then went to the Eakin home. They found Frances B. Eakin, David's wife, at home. She told Morris that the Copperhead tract contained 300 acres and that the price was $35,000. Morris proposed to pay as follows: $500 down, $17,000 at the time a written agreement was executed, and $17,500 ninety days from that date, no timber to be cut until it was paid in full. Morris and Dick then went to a local bank in Franklin, Pennsylvania, to talk to one Ren D. Latchaw, who handled the Eakins' affairs, concerning this property and then proceeded to the office of H. Carl Wasson, an attorney, in the same city. Wasson prepared a receipt for the deposit of $500 which was signed by David Eakin for himself and his brother, and reads, in pertinent part, as follows:

"We hereby acknowledge to have received from Morris Brothers Lumber Company, of Vienna, Ohio, the sum of Five Hundred Dollars ($500.00) to apply on the purchase price of a tract of timber in Clinton Township, Venango County, Pennsylvania, formerly owned by John L. Eakin and now owned by David E. Eakin and John L. Eakin, Jr., also known as Lester Eakin, heirs-at-law and devisees of John L. Eakin, deceased, the said timber being all the timber now growing upon a parcel of land in said Clinton Township bounded as follows:

"On the North by land formerly the Gailey Farm and land owned by the said David E. Eakin, et al from which the timber was sold to Delbert Rankin by John L. Eakin; on the East by the Bullion and Kennerdell Black Top Road; on the South by the gravel road which runs from the above mentioned black top road westwardly to what was formerly Summit City and on the West by the Drilling Rig Road, the Waite Lease and land now or formerly of Gailey. Containing about two hundred ninety-one (291) acres, and being commonly known as the Cooperhead [sic].

"The total purchase price for said timber is thirty-five thousand Dollars ($35,-000.00), of which Seventeen Thousand Dollars ($17,000.00) will be paid on or about December 10, 1954, and the balance, to-wit, Seventeen Thousand Five Hundred Dollars ($17,500.00) within three (3) months from the date of the Timber Contract, it being understood that no timber whatsoever will be cut from said premises until the purchase price has been paid in full. * * * No timber shall be cut from said premises less than ten (10) inches in diameter measured breast high. * * * The purchasers shall use normal care to keep from damaging the small timber and shall likewise use due care in protecting all oil wells and oil, gas and rod lines * * *. The purchasers shall have five (5) years from the date of the Agreement in which to cut and remove said timber."

It was at Wasson's office that Morris for the first time noticed that the acreage was 291 acres but said that it was "close enough". He also learned there that only timber 10 inches in diameter at breast height was to be cut.

On December 10, 1954 Morris, Hepfl and David Eakin went upon the land and there seemed to be some confusion in finding the exact boundaries. Morris told Eakin that the line was not a particular factor with him but it was to Hepfl because of the danger of crossing the line into someone else's timber. Eakin told Morris that there were 291 acres, although they always referred to that tract as containing 300 acres. Morris learned that he was not to cut timber from a small acreage at the west side of the premises or timber within a certain distance from the oil wells and power stations located on the tract, but he thought it was still big enough so that he could give that much up and not be hurt badly. Under date of December 9, 1954 the parties executed an agreement in which it was recited that the two Eakin brothers had conveyed to the plaintiff a tract of timber containing about 291 acres for $35,000, which was to be paid to the Exchange Bank and Trust Company of Franklin to release judgments held by the bank and for delivery of a timber deed. Under the same date a document described therein as a timber deed was executed by the two Eakin brothers and their wives, called therein grantors, and signed by the plaintiff, called grantee, selling and conveying all the timber 10 inches or over in diameter measured breast-high contained in the Copperhead tract which was described therein by the same boundaries which were set out in the receipt signed December 6, 1954, and as "Containing about two hundred ninety-one (291) acres, and being commonly known as the Copperhead." The grantee was given five years to remove the timber. The grantors reserved to themselves and the grantee agreed not to cut any timber within 50 feet from any of the 35 oil wells and 100 feet from either of the two power stations located on the tract.

The plaintiff's employees started cutting the timber in April, 1955. They told Morris that there would be a shortage in the timber which he disbelieved. When again informed of a shortage he went upon the property but thought he should wait a little longer. When the employees were "about finished with the last set" it became certain that there was a shortage. About 1,500,000 board feet had been cut whereas Morris had estimated that 300 acres would produce at least 4,000,000 board feet. The present suit was started on June 1, 1956. Subsequently, a survey showed that there were only 118.911 acres upon which timber had been cut.

The case was tried to a jury. After the plaintiff rested its case the defendants moved for compulsory dismissal under Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The district court dismissed plaintiff's count based on fraud, concluding that there was no proof of fraudulent representations. Upon the close of the evidence, the defendants moved for a directed verdict which was granted in respect to the wives of the Eakin brothers, but decision was reserved in respect to the two Eakin brothers themselves. The jury returned a verdict in favor of the plaintiff in the amount of $15,000. The district court, after hearing argument on the defendants' motion for judgment n. o. v. or for a new trial, set aside the jury verdict and entered judgment in favor of the defendants n. o. v. In the alternative, the district court entered an order granting a new trial on the ground that the jury's verdict was contrary to the weight of the evidence. The plaintiff appealed.

On this appeal the plaintiff contends that the district court erred in granting judgment n. o. v. because the verdict was in accordance with the evidence, the applicable law and the charge of the trial judge. It also urges that the district court erred in dismissing its count based on fraud. No objection, however, is

raised as to the action of the district court in directing a verdict in favor of the two wives who had been joined as defendants.

■ We first consider the plaintiff's contention that the district court erred in dismissing its claim for loss of profits due to fraud and misrepresentation on the part of the defendants. Its argument is that the record discloses ample evidence of fraud since David Eakin as a boy had lived on the Kennerdale tract, of which the Copperhead tract was a part, that he knew the actual number of acres which it contained, and had misrepresented the amount to plaintiff. In support of its argument the plaintiff cites cases in which the Pennsylvania courts have held that certain misrepresentations were evidence of fraud.[1] We are satisfied, however, that these cases turned on their own particular facts. In the present case we find no evidence of bad faith on the part of the defendants. Nor does it appear that they had reason to believe that the tract contained less acreage than was stated in the timber appraisal report. There is nothing in the evidence from which an inference could be drawn that the acreage was known or believed to be otherwise than as represented. Under these circumstances, the district court was clearly right in finding no proof of fraud in the case.

■ The plaintiff next contends that there was sufficient evidence to support the verdict and that, accordingly, the district court erred in setting aside the verdict of the jury and in entering judgment for the defendants n. o. v. It is well established that a motion by a defendant for judgment n. o. v. under Rule 50 (b) of the Federal Rules of Civil Procedure presents only the question of law as to whether when all the evidence is considered, together with all reasonable inferences which may be drawn therefrom most favorably to the plaintiff,

there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case.[2] The rule has not withdrawn from the jury and given to the trial judge the exclusive power of the jury to weigh the evidence and to determine questions of fact.[3]

The plaintiff argues that at the trial it had advanced the contention that it had contracted on the basis of the acres of timber to be cut, namely, 300 acres, subsequently reduced with its consent to 291 acres, as represented to its officers and employees by the defendant David Eakin and his wife and stated as about 291 acres in the receipt, agreement and timber deed, whereas at the trial Eakin had testified that he had sold the plaintiff only the timber included within the bounds which had been pointed out even though that turned out to be no more than 120 acres. This evidence, says the plaintiff, raised a question of fact for the jury to resolve. This question was in fact presented to the jury by the trial judge in his charge, without objection by the defendants, in the following language:

> " * * * The principal point the jury should keep in mind * * under the facts in this case which have been developed by the evidence, is whether the number of acres was the essence of the contract, so to speak, and if so, was there a deficiency in acreage? That is the first issue, whether the purchase was made by acres mentioned, per acre, so on, or whether it was by tract. In other words, what was the agreement between the parties?
>
> "Of course business people, people may make any contract on a subject of this kind that they wish. And the plaintiffs very clearly have indicated their side of the case points to the proposition that it was orally represented to them by Mrs.

1. Griswold v. Gebbie, 1889, 126 Pa. 353, 17 A. 673; Blygh v. Samson, 1891, 137 Pa. 368, 20 A. 996.

2. Wilkerson v. McCarthy, 1949, 336 U.S. 53, 57, 69 S.Ct. 413, 93 L.Ed. 497.

3. Berry v. United States, 1941, 312 U.S. 450, 452–453, 61 S.Ct. 637, 85 L.Ed. 945.

Eakin, by David Eakin, that they were talking of 300 acres. You have that subject and counsel has just gone over it and reviewed it with you. On the other hand, the defendants' contention is, of course, that they were talking about the tract, a parcel of land known as the Copperhead, known as 291 acres, merely descriptive of the land upon which the timber tract was. And of course the writings there refer to boundaries which are less than the 291 acres. * * *

"Plaintiff contends that acres were purchased. Its testimony is that the property was represented to Mr. Dick Morris as 300 acres, when the papers were drawn it was 291, but in the words of Dick Morris, he said that was close enough and he was agreeable. The jury must accept one of two contentions in this matter. If you accept the evidence of the plaintiff that the purchase was made by the acre or on the basis of 300 acres, then you may consider the further fact as to whether the parcel which was cut over was actually less than 291 acres mentioned in the timber deed or in the other papers. You will recall in that connection that the receipt, the escrow agreement and the timber deed says about 291 acres. The letter to Mr. Dick stated 260 acres more or less, as the Court recalls."

■■■■ In finding for the plaintiff it is clear that the jury necessarily accepted the plaintiff's version that 291 acres of timber, rather than the timber on a specific tract, were purchased. The district court, however, in its opinion granting the defendants' motion for judgment n.

o. v. concluded that the written instruments do not bear out the construction placed upon them by the jury. He held that the case was governed by the Pennsylvania decisions holding that when writings contain natural boundaries, courses and distances, as well as a recitation of quantity, it is to the boundaries to which the grantee must look.[4] We think that the district court erred in so holding. For the cases upon which the court relied related to deeds for the conveyance of real estate. Those cases do not necessarily apply to a sale of standing timber, which may be regarded as a sale of personalty if the parties so intend.[5] Indeed when the cutting of the standing timber sold is to commence at once and be completed within a reasonable time it is to be regarded as personalty.[6] And five years for the removal of trees has been held by the Supreme Court of Pennsylvania to be a reasonable time.[7] Accordingly it was quite proper for the trial judge to submit to the jury, as he did, the question whether the parties intended to sell acres of timber (a sale of personalty) or the timber standing on a specific tract of land (a sale of realty). The jury's answer that it was the former is amply supported by evidence and renders wholly inapplicable the cases to the effect that in a deed of realty natural boundaries control over a recital of quantity. We conclude that the verdict of the jury was supported by the facts and the applicable law and that it was error to set it aside and direct judgment for the defendants.

■■■■ This brings us to the plaintiff's contention that the district court erred in granting in the alternative defendants' motion for a new trial if on appeal it should be found that the judgment n. o. v.

4. Large v. Penn, 1821, 6 Serg. & R., Pa., 488; Farmers' and Mechanics' Bank v. Galbraith, 1849, 10 Pa. 490; Petts v. Gaw, 1850, 15 Pa. 218; Riddle v. Foster, 1858, 32 Pa. 163; Kreiter v. Bomberger, 1876, 82 Pa. 59; White v. Price, 1902, 202 Pa. 128, 51 A. 755.

5. McClintock's Appeal, 1872, 71 Pa. 365, 366; Robbins v. Farwell, 1899, 193 Pa.

37, 44 A. 260; Strause v. Berger, 1908, 220 Pa. 367, 69 A. 818; Havens v. Pearson, 1939, 334 Pa. 570, 572–574, 6 A. 2d 84, 86, 122 A.L.R. 512.

6. Strause v. Berger, 1908, 220 Pa. 367, 69 A. 818.

7. Patterson v. Graham, 1894, 164 Pa. 234, 30 A. 247.

was erroneous. The district court's action appears to have been based on its view of the weight of the evidence, the credibility of the witnesses and the amount of the verdict. We think that it would have been error for the court to have granted a new trial upon the sole ground that the verdict of $15,000 was not supported by the evidence. For it was solely for the jury to determine from all the evidence the actual shortage of acres and the plaintiff's actual loss therefrom. It is well settled, however, that the granting of a new trial upon the ground that it is against the weight of the credible evidence is a matter within the sound discretion of the trial court.[8] We cannot say that there was an abuse of that discretion here.

The judgment of the district court will be reversed and the cause remanded for the new trial which the court ordered in the alternative.

---

8. Peters v. Smith, 3 Cir., 1955, 221 F.2d 721, 725.