**SYLVIA HOMER, Plaintiff**

v.

**ELIZABETH CRANE LORILLARD,[1]**
**EVERETT RICHARD, RAY B. SAUNDERS, Defendants**

Civil No. 545-547-1966

Municipal Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

December 6, 1968

---

[1] See, also, 6 V.I. 558.

VINCENT A. GAMAL, ESQ., Christiansted, St. Croix, Virgin Islands, *for plaintiff*

BROWN AND BRYANT (BRITAIN H. BRYANT, ESQ.), Christiansted, St. Croix, Virgin Islands, *for defendant*

RAY B. SAUNDERS, Frederiksted, St. Croix, Virgin Islands, *for defendant*

JOSEPH, *Judge*

## MEMORANDUM OPINION

Plaintiff, Miss Sylvia Homer, moved to St. Croix from Brooklyn, New York, on July 10, 1966, with the intention of making her home here. She had previously obtained employment but had not found a permanent place to live before her arrival. Her employer introduced her to defendant Ray B. Saunders, a real estate broker who, as the agent for the other defendants, Elizabeth Crane Lorillard and Everett Richard, was in charge of the management, rental and, potentially, the sale of the property which they owned known as La Grange Apartments. This property consists of a two story or split level building containing three apartments and slightly less than an acre of ground, the same being plots 27A, 27I and 27J of the subdivision of La Grange, West End Quarter, St. Croix, Virgin Islands, as shown on Public Works Drawing No. 1086.

When Miss Homer informed defendant Saunders that she was looking for an apartment he told her that one at La Grange Apartments would be available for rental on August 1, 1966, and offered to show it to her which he did. She arranged with Mr. Saunders to rent the apartment for the monthly rental of $150. Some time thereafter, and before July 21, 1966, Mr. Saunders told her that he had taken a $30 deposit from someone else for the rental of the apartment and that if she wished to occupy it she would have to buy the property. She thereupon went with Mr. Saunders to view the property in its entirety, as she had looked only at the vacant apartment on her first trip. At this time she discussed with him the means of financing the purchase and made it clear to him that she could only handle the necessary payments if she had more income from the property than it then produced. Miss Homer's testimony, which was direct and consistent throughout, was that he told her that the property ran across the face of

647

the hill on which it was located and that there was adequate land beside the existing building to build another of the same size facing, as does the existing building, down the hill. She further elaborated by stating that he stood on the property facing down-hill as does the house and spread his arms to illustrate that the property lay across the hill. Mr. Saunders denied that he told her that the property so lay, but admitted that although she had asked him for a map of the property she had not received one, and that he did not at any time show her a map or plat at the property site, that he did not point out the boundary posts to her, and that he had suggested that she should build another building for rental purposes and thus increase the rental income from the property in order to meet the mortgage payments. Testimony as to his suggestions in this latter regard was given in the face of his earlier sworn statement that there was no desirable building site on the property. This inconsistency and others which appear throughout his testimony make it extremely difficult for the court to place any reliance upon it. For example, although he denied telling her that if she wanted to live on the property she would have to buy it, he admitted that as she testified, after agreeing to rent the apartment to her, he accepted a $30 deposit from "a friend of the previous tenant" for the same apartment. These conflicts and inconsistencies and the demeanor of the witness on the stand leave no doubt in the mind of the court that his contradiction of plaintiff's testimony cannot be believed.

At subsequent meetings with defendant Saunders both alone and in the company of defendants Richard and Lorillard and the latter's husband the terms of purchase were agreed upon. On July 21, 1966, eleven days after plaintiff's arrival on St. Croix, defendant Saunders went to plaintiff's place of employment with a form of real estate sales contract, the blanks of which had been partially filled in, with

the purpose of obtaining her signature to the contract as a "binder". She thereupon called her attorney, Mr. James H. Isherwood, Esq., asked if he would represent her in the purchase of the property and, upon his assurance that he would do so, she asked for certain information as to the contract and his advice as to signing it. When Mr. Isherwood asked to see the contract before giving any advice in the matter she told him that there was not time inasmuch as she had been told that if she wanted the property she would have to sign immediately. Mr. Isherwood then told her that he knew that the title was good as he had examined it when he represented the defendant owners at the time of their purchase and gave her, by telephone, the legal description of the property which she inserted on the contract form. He also agreed, at her request, to send her a plat of the property which he had in his office. After talking with Mr. Isherwood and completing the contract, with the exception of the handwritten insertions, she signed it, and subsequently payed the sum of $2,000 as an earnest money deposit by check made payable to defendant Saunders as agent for the defendant owners.

Thereafter, on or about August 10, 1966, Miss Homer received from Mr. Isherwood the promised copy of the Department of Public Works drawing of the property in question. The copy she received was a segment of the drawing which did not have direction marks on it and which depicted the three lots in question as a long narrow strip of land with a small area, apparently a right-of-way approximately 19 feet wide and 75 feet long, jutting from it at one end, the width of the strip being 87.5 feet and the approximate length 475 feet. When the drawing is held in the normal position for reading this strip runs across the drawing from left to right. Three adjoining plots, 27AA, 27L and 27K, are also shown as lying below lots 27A, 27J and 27I. After receipt of this copy Miss Homer, who is not

experienced in reading or understanding such drawings, went to Mr. Isherwood's office on August 31, 1966, to have the directions indicated to her. His secretary marked "north" on the plat and she learned, for the first time, that the property did not run across the hill, but instead ran up and down the hill. Inasmuch as defendant Everett Richard had offices in the same building as her attorney she went immediately there to discuss the matter with him. At that time she told him of her plan to build another house or apartment building on the property for additional income and that she had agreed to purchase the property in reliance upon Mr. Saunder's representations to her that there was sufficient land area in the plots she was buying to build the proposed building at the side of the existing one. Mr. Richard confirmed Mr. Saunder's statements in this regard and as an illustration made a rough drawing which has been introduced in evidence by stipulation as the attachment to the complaint marked "Exhibit B". The shape of the area drawn by Mr. Richard is consistent with the area shown on the Public Works Drawing if Plot 27AA is included in the property to be conveyed; it is not otherwise possible to relate his drawing to the shape of the land actually owned by defendants Richard and Lorillard. Miss Homer stated that Mr. Richard took the drawing she had obtained from Mr. Isherwood and marked four "X" marks on it, one on each of the three plots covered by the contract of sale and one on Plot 27AA. He also drew the outline of the existing building on Plot 27A. She told him that according to the information she had received from Mr. Isherwood he did not own that plot, whereupon he telephoned his attorney, Mr. Brown, for verification. After the completion of his conversation with Mr. Brown he told her that he was sorry, that a mistake had been made as he thought that he and defendant Elizabeth Crane Lorillard did own the other lot, and that he would be glad to return her deposit to her.

He suggested that she have her attorney contact his attorney for this purpose. Miss Homer attempted in the way suggested to obtain the refund of her money but this was refused and she brought suit on September 28, 1966, to recover the deposit paid and for damages.

Mr. Richard, while acknowledging that the meeting took place on August 31, 1966, as Miss Homer testified, and that he might have made the drawing in question, denied that he agreed to a refund of the deposit, or that he told her that the property ran across the face of the hill. Mr. Richard's credibility also leaves much to be desired. Although he was very strong in his denials on both direct and rebuttal examination, his answers to questions on cross-examination were far from being clear and sharp. He had admitted by stipulation that the drawing was his but in testifying he said he "might recollect" drawing it, that he wouldn't "deny it", that "possibly" he drew the location of the house, he "couldn't remember". It is difficult to comprehend that he could be so positive about things he said he had not done and so negative about his positive actions.

This conversation with defendant Richard, occurring as it did after the execution of the contract, is not, of course, a part of the inducement. It does, however, give force to the conclusion that defendant Saunders, as agent for the owners, did not know where the boundaries of the property lay and that as plaintiff testified, he spread his arms to show a vast expanse of land across the face of the hill, in complete disregard of or in the absence of knowledge of the truth. This conclusion is further supported by the fact that after inducing plaintiff to execute the sales contract upon the representation that the property lay across the hill he caused a surveyor to locate the bound posts. It is also interesting to note that although at one point in his testimony defendant Saunders stated that the property lines

should have been obvious to plaintiff because the grass was cut in front but not to the side of the existing building beyond the property line, he later defended his failure to show her the bound posts by stating that they were in the brush on a hill or slope. He also testified that the boundaries had never been pointed out to him by the owners but that the maintenance man had shown them to him.

■■ From all of this the court finds that the plaintiff was induced to enter into the contract upon a misrepresentation of a material fact by defendant Saunders, the acknowledged agent of defendants Lorillard and Richard, as to the identity and location of the land to be conveyed. As was said in Corbin on Contracts, Vol. 3, § 604:

"'The wrong tract or the wrong boundary lines, may have been pointed out by the vendor or his representative.' Whether this last is the case or not, the purchaser usually is held entitled to recission, with mutual restitution if performance has occurred. Mistake as to identity of the land is a material and vital mistake."

See also Bligh v. Samson, Pa. 1890, 20 A. 996; De Joseph v. Zambelli, Pa. 1958, 139 A.2d 644, 647; Restatement of the Law of Contracts, §§ 470, 476.

Upon this finding, plaintiff is entitled to recover the sum of $2,000 paid as a deposit on the purchase and to a rescission of the contract of purchase. In view of the fact that no evidence was offered by defendants which would show that defendant Saunders, the agent to whom the deposit was paid, has changed his position by paying over the money to the other defendants or otherwise (see the Memorandum Opinion entered herein on defendants' Motion to Dismiss on December 20, 1967), a joint and several judgment will be entered against all three defendants.

■ This brings us to the question of plaintiff's claim for damages she incurred in preparing to meet her obligations under the contract, namely in raising the funds for the cash payments required. She has testified without dis-

pute that she had to travel from St. Croix to New York to remove from her bank safety deposit box securities which she had to sell in order to make the cash payments. She further testified that she sold the securities at a loss of $578.30 and that she incurred certain transportation expenses. Plaintiff has elected to seek rescission of the contract and a return of the purchase money paid rather than to sue in tort for fraud and deceit claiming damages suffered as a result of the false representation by defendants. The suit for rescission is founded on the theory of unjust enrichment. As was said in Elyea v. R.C.A. Victor Co., 5th Cir., 1935, 79 F.2d 759, 760:

"A detriment to the plaintiffs may be a sufficient consideration for a contract in an action for damages for breach thereof; but it is not something which the defendant can be required to give back in an action for restitution upon rescission."

In Davidson v. McKown, Kan., 1943, 189 P.2d 421, 6 A.L.R.2d 1, the court held:

"The general rule applicable to such a contention is to be found in 28 C.J.S., Election of Remedies, p. 1070, § 6, where it is stated: 'As a general rule, a remedy based on the theory of affirmance of a contract or other transaction is inconsistent with a remedy arising out of the same facts and based on the theory of its disaffirmance, or rescission, so that the election of either is an abandonment of the other. Where a party rescinds a contract the law does not permit him thereafter to make use of it as subsisting for the purpose of recovery thereon. . . .' "

■ It is, however, unnecessary to rely upon this principle in the present case. In a case factually similar to the present case, Brooks v. Jensen, Idaho, 1954, 270 P.2d 425, the purchaser sought rescission of a contract to purchase real estate upon the ground that sellers had made false representations as to a certain boundary line, asking for a return of the payments made along with the value of improvements and damages for transportation expenses

and losses sustained on the sale of assets. This court agrees with the conclusion there reached, as follows:

"Conceding, without deciding, appellants might in rescission be entitled to damages in addition to return of payments and value of improvements, . . . appellants' expenses for trips from and loss in the sale of their property in Montana, though necessary to secure funds to make the purchase herein, are too remote and were not sufficiently within the contemplation of the parties to be recoverable." ·

Plaintiff's claim for damages in consequence of her expenses and loss in obtaining funds for the purchase of the property is accordingly denied.

Defendants have filed a counterclaim for the rental value of the property for a period of time during which it was allegedly occupied by plaintiff, for loss of rentals which they claim to have suffered and damages presumably for the value of furnishings "missing" from the apartment she occupied. The evidence does not sustain a finding that plaintiff caused or contributed to the cause of vacancies in either of the other two apartments, or in fact that the one was vacant when she left the premises. Nor is there even a scintilla of evidence that plaintiff or anyone else removed any articles belonging to defendants from the premises. On the contrary her testimony is that she left certain articles which she had purchased, such as brooms and mops, as she could not take them with her when she moved to a hotel.

Plaintiff occupied one apartment on the property from August 1, 1966, until September 11, 1966. The apartment had been rented for $150 per month prior to her occupancy, and that was the rental at which it had originally been offered to her. When the contract for the purchase of the property was negotiated it was agreed by the parties that plaintiff should take possession of the apartment on August 1, 1966, and at the time of settlement pay the sum of $5 per day from that date until settlement, the daily sum

being based on the monthly rental of $150. The contract having been rescinded this provision must also fail. The court finds, however, from the evidence that $150 is a reasonable monthly rental for the apartment plaintiff occupied, and that since she remained in possession during August and a portion of September, she is liable for rent at that rate for the full two month period. Judgment on the counterclaim will therefore be entered in favor of defendants Lorillard and Richard for the sum of $300. Defendants are to pay the costs of the action, including plaintiff's attorney's fee in the amount of $500.