# CONSTANCE JACKSON and ANTHON JACKSON, Plaintiffs
## v.
## ALFRED A. SMITH, Defendant

Civil No. 730/1981

Territorial Court of the Virgin Islands
Div. of St. Thomas and St. John

February 28, 1983

JOHN L. MADURO, ESQ., St. Thomas, V.I., *for plaintiffs*

CHARLOTTE POOLE DAVIS, ESQ., St. Thomas, V.I., *for defendant*

MEYERS, *Judge*

## MEMORANDUM OPINION

The plaintiffs, Anthon Jackson and his wife, Constance Jackson, ask this Court to invalidate a warranty deed conveying a parcel of land from Mr. Smith to the Jacksons because Mr. Smith represented to them that he was the owner of record of a plot of land, a portion of which belonged to an adjacent property owner. The matter came on for trial on October 27, 1982. The parties submitted post-trial memoranda and the Court took the matter under advisement. For the reasons that follow, the Court enters judgment in favor of the plaintiffs.

The facts are basically undisputed. On or about May 8, 1981, Mr. Smith agreed to sell and the Jacksons agreed to purchase a parcel of land described as No. 20-22G Estate Smith Bay, Nos. 1, 2, and 3

East End Quarter, St. Thomas, Virgin Islands, as shown on Public Works Department Drawing No. F9-3833-T80, consisting of 10,196 square feet, more or less. (See attached copy of said map which was admitted in evidence as Defendant's Exhibit D.) The purchase price was $14,000.00. The closing was held on May 13, 1981, at which time the Jacksons paid Mr. Smith $10,000.00 cash and executed a first priority purchase money mortgage and promissory note for the balance of $4,000.00. The Jacksons then received a warranty deed. The promissory note was payable in thirty monthly installments of $150.93 each, beginning in June of 1981. The Jacksons made two installment payments before the filing of this action.

Before the closing, Constance Jackson and Mr. Smith visited the site. Mr. Smith showed Mrs. Jackson where No. 20-22G Estate Smith Bay was located by standing at a high elevation at the entrance of Lawrence Fleming's driveway and pointed to an area downhill facing Cassi Hill. The area that was pointed out allegedly had a "good view", and was next to the property owned by Fleming. Smith admitted that on the first visit to the site with Mrs. Jackson he parked his vehicle at the entrance to Mr. Fleming's driveway. He denies, however, that he stood at the high elevation where Mrs. Jackson said he did. He claimed that he walked downhill a short distance before pointing out the site to Mrs. Jackson.

The Jacksons thereafter hired a Mr. E. Henry and Mr. Fleming to clean and clear the land shown them by Mr. Smith. While Mr. Fleming was clearing the land, Mr. Smith remarked that he had noticed that he had begun to work on the Jacksons' property. Subsequent to the cleaning and clearing, the Jacksons engaged the services of a licensed surveyor, Mr. Charles Hamilton, who advised them that a portion of the land shown to them by Mr. Smith, which they had cleaned and cleared, did not belong to Mr. Smith. The Jacksons immediately went to Mr. Smith and demanded the return of their money. Mr. Smith refused claiming he did not mislead anyone and this suit followed.

The Jacksons alleged that Mr. Smith willfully, falsely, and with the intent to deceive them, showed them land he claimed to be his when he in fact knew that a portion of the land shown to them was owned by a Mr. Savin. Mr. Smith admitted that he sold a large parcel to Mr. Savin, but that the Savins' land was located east of the estate road shown on defendant's Exhibit D. They further allege that they relied on Mr. Smith's representation to their detriment in that they expended considerable sums of money to clean and clear the land, to have the boundary markers located, and for architec-

tural drawings. The Jacksons pray that this Court invalidate the warranty deed conveying the said parcel to them by Mr. Smith, for a refund of all monies they paid Mr. Smith, and for reimbursement from Mr. Smith for sums expended in connection with the property.[1]

Mr. Smith had denied the substantive allegations of the Jacksons' complaint, and as an affirmative defense, raised the doctrine of caveat emptor. He claimed that the Jacksons were obligated to examine the title and metes and bounds of the property. Mr. Smith counterclaimed for $4,000.00 alleging that the Jacksons were in arrears for the months of August and September 1981, and therefore were in default of their mortgage. He requested an order requiring a sale of the property to satisfy the judgment.

The issues in this case are as follows:

1. Whether Mr. Smith willfully, falsely, and with the intent to deceive the Jacksons, represented his ownership of a portion of land to the detriment of the Jacksons.

2. Whether the Jacksons were under a duty to inspect the premises and to investigate the ownership of the plot prior to closing thereby invoking the doctrine of caveat emptor.

3. Whether the Jacksons relied on Mr. Smith's representation, false or otherwise, to their detriment thereby entitling the Jacksons to a rescission of the contract, restitution, and damages.

I

The trial testimony revealed that Mr. Smith offered to sell and the Jacksons offered to purchase a plot of land in Estate Smith Bay. Mrs. Constance Jackson testified that Mr. Smith pointed out the land that he had for sale, and he also pointed out where one of the boundposts was. All of the boundposts or boundary markers could not be seen from where they stood because of the height of the bushes. She testified that it had "a good view". Mrs. Jackson further stated that she and her husband had made several trips to the site for the purpose of showing the property to the surveyor, contractor, and the draftsman in preparation for building a house thereon.

Mr. Charles Hamilton, a licensed surveyor, testified that at the time he surveyed and subdivided the plot in question for Mr. Smith

---

[1] The allegations contained in plaintiffs' complaint sound in tort; however, the plaintiffs' prayer for relief is based on contract law. The Court will decide this case based on contract law. In any event, based on the facts and circumstances of this case, the results will be similar whether decided under contract or tort law.

he had informed him that the disputed portion of the property in question did not belong to him. That portion is indicated on the same map as "Portion of #20" and is situated next to the southern boundary of Parcel No. 20-22G. (See darkened portion of defendant's Exhibit D.) He also said that Mr. Smith "truly believed" the plot of land described as "Portion #20" was his and that it was an integral part of Parcel No. 20-22G. Moreover, he testified, Mr. Smith insisted the land was his. Mr. Hamilton's conversation with Mr. Smith occurred before the sale of the land to the Jacksons.

Lawrence Fleming, a neighbor who lives very close to the property in issue[2] testified he overheard Mr. Smith tell Mrs. Jackson something to the effect that "your bounds start from there up." He further testified that Mr. Smith told Mrs. Jackson that one bound-post started from his boundary (Mr. Fleming's) going towards the north. He corroborated Mrs. Jackson's testimony to the extent that the area where Mr. Smith stood to point out the land was approximately the same area Mrs. Jackson indicated. He further testified that he was hired by the Jacksons to clean and clear the parcel in question. While doing so, Mr. Smith remarked that he had noticed that the Jacksons had begun to work on their property.[3]

Based on the testimony, the Court cannot find that Mr. Smith intended to deceive the Jacksons. Although most of the requirements to prove fraud have been met, one critical requirement is lacking, namely, that Mr. Smith knew that his misrepresentation was false. The Court, having viewed the property and having heard the testimony of the surveyor finds that there was no intent to deceive the Jacksons and, therefore, finds that no fraud was committed. However, although the Court does not find fraud, it does find that the Jacksons were induced to purchase the parcel of land based upon a misrepresentation of a material fact by Mr. Smith as to the location and boundary of the land to be conveyed.

Restatement (Second) of Contracts, § 159, defines a misrepresentation as an assertion that is not in accord with the facts. "A statement intended to be truthful may be a misrepresentation because of ignorance or carelessness. . . ." Restatement (Second) of

---

[2] Based upon Mr. Smith's Exhibit D, Public Works Department Drawing No. F9-3833-T80, "Portion of #20" lies between Mr. Fleming's property and Parcel No. 20-22G.

[3] The Court viewed the property, and the land cleared by Mr. Fleming and Mr. Henry included the area described as "Portion of #20". The Court also noted that "Portion of #20" is at a higher elevation than Parcel No. 20-22G, and the former has a "better view" than the latter.

Contracts, § 159, Comment a. Mr. Smith's claim to property that was not his and his subsequent agreement to sell to the Jacksons constituted an assertion which was not in accord with the facts. However, a misrepresentation is inconsequential unless it is material.

■ Restatement (Second) of Contracts, § 162(2), defines a material misrepresentation as one which would be likely to induce a reasonable person to manifest his assent, or one which the maker knows would be likely to induce the recipient to do so. The testimony shows that the plot was purchased after Mr. Smith had misrepresented the boundary of the property. Whether the contract between the Jacksons and Smith is voidable is determined by the rule stated in § 164. Restatement (Second) of Contracts, § 164(1), states:

> If a party's manifestation of assent is induced by either a fraudulent or a *material misrepresentation* by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient. (Emphasis added.)

■ This case is not unlike Homer v. Lorillard, 6 V.I. 645 (Terr. Ct. 1968). In that case, the plaintiff brought an action to recover a deposit made in connection with the purchase of a parcel of real property. The plaintiff in that action also was sold a lot that did not belong to the vendor. The court in Lorillard held that:

> Where facts showed that purchaser was induced to enter into contract for purchase of land upon a misrepresentation of a material fact by seller's agent as to the identity and location of land to be conveyed, purchaser was entitled to recover money paid as deposit on purchase and to a rescission of the contract of purchase. 6 V.I. at 645.

■ The court in Lorillard quoting Corbin on Contracts, Vol. 3, § 604, stated:

> *"The wrong tract or the wrong boundary lines, may have been pointed out by the vendor or his representative." Whether this last is the case or not, the purchaser usually is held entitled to rescission, with mutual restitution if performance has occurred. Mistake as to identity of the land is a material and vital mistake.* 6 V.I. at 652. (Emphasis supplied.)

■ It is undisputed that Mr. Smith had sold some land to the Savins. It is also uncontradicted that Mr. Hamilton informed Mr. Smith that a portion of the land was not owned by Smith and this

was told to Mr. Smith prior to the land being sold to the Jacksons. Notwithstanding his being told by Mr. Hamilton that a portion of the land was not his, I, nevertheless, find that at the time of the sale to the Jacksons, Mr. Smith was still laboring under the erroneous belief that "Plot No. 20" was an integral part of Parcel No. 20-22G. This erroneous belief is consistent with the configuration of the two parcels as shown on Defendant's Exhibit D. The Court, therefore, concludes that his misrepresentation was material and that the Jacksons relied upon the misrepresentation.

## II

■ Mr. Smith relied heavily on the doctrine of caveat emptor and insisted that the Jacksons were under a duty to investigate. In the interrogatories propounded by Mr. Smith to the Jacksons on February 3, 1982, the Jacksons were asked whether they had received a copy of the map describing the boundaries of Parcel No. 20-22G Estate Smith Bay. The Jacksons responded that five (5) minutes prior to Mr. Smith's attorney accepting their check, she showed them a copy of the map. Her trial testimony was consistent with this response. Obviously, this did not give the Jacksons an opportunity to investigate, and furthermore they were under not duty to do so. Piazzini v. Jessup, 152 Cal. App.2d 58, 314 P.2d 196 (1957); Cousineau v. Walker, Alaska, 613 P.2d 608 (1980). In Piazzini, it was stated:

> A misrepresentation of the area of real property is a misrepresentation of a material fact, and if relied upon will warrant rescission or damages. *The fact that plaintiffs visited the property does not necessarily determine that they depend upon their own observation in determining the area of the lot. The plaintiff buyer 'has the right to rely on a vendor's representation as to the quantity of land he is offering for sale, and that the vendee is not under a duty to make an independent investigation* . . . the owner of land is presumed to know the area and boundaries of his own land.' [Citations omitted.]

Mr. Smith admitted that he had previously sold real estate on several occasions. He was informed by his own surveyor that a portion of the parcel in issue was not his and yet he misrepresented the ownership thereof. The Jacksons had never purchased real property before and they had a right to rely on Mr. Smith's representations. Mr. Smith has not cited any authority for his contention that the Jacksons were under a duty to investigate, and he should not be permitted to hide behind the doctrine of caveat emptor.

367

The Court, therefore, concludes that the Jacksons were not under any duty to investigate, and, accordingly, the Jacksons had a right to rely on Mr. Smith's representations.

### III

This brings us to the final issue of whether the Jacksons' reliance on Mr. Smith's misrepresentation was to their detriment, thus, entitling them to rescission of the contract and restitution. Constance Jackson testified that upon viewing the property with Mr. Smith for the first time, Mr. Smith pointed out the property he described as Parcel No. 20-22G. The Court finds that Mr. Smith misrepresented the identity and location of his property. As a result, he included as part of Parcel No. 20-22G that adjacent plot described as "Portion of #20". The Jacksons have expended considerable sums because of Mr. Smith's negligent misrepresentation. In addition to the $10,301.86 paid Mr. Smith by the Jacksons towards the purchase price of the land, the Jacksons have expended the following sums:

a. surveyor's fee of $80.00;
b. preparation of plans and specifications totalling $1,225.00;
c. cleaning and clearing of land totalling $450.00.

The total sums expended in matters incidental to the ownership of the property and in addition to the $10,301.86 cash paid to Mr. Smith is $1,755.00.

The measure of damages is covered under Restatement (Second) of Contracts, § 376.

> A party who has avoided a contract on the ground of lack of capacity, mistake, *misrepresentation*, duress, undue influence, or abuse of fiduciary relation is entitled to restitution for *any benefit* that he has conferred on the other party by way of part performance or *reliance*. (Emphasis added.)

■ Mr. Smith has benefited in that his property has now been resurveyed, and it has been cleaned and cleared. Therefore, the Court will award the Jacksons those reliance expenses. The Court will not allow the $1,225.00 expended for the preparation of the plans and specifications as the plans are still of use to the Jacksons and Mr. Smith has not benefited from them.

### ORDER

Based on the accompanying Memorandum Opinion and the Court being duly satisfied in the premises, it is hereby

ORDERED that the sale of Parcel No. 20-22G Estate Smith Bay be and is hereby held RESCINDED; and it is further

ORDERED that the Warranty Deed executed by the defendant on May 13, 1981, be and is hereby SET ASIDE; and it is further

ORDERED that plaintiffs shall have judgment against the defendant in the sum of $12,056.86 representing $10,000.00 for the cash paid on deposit at the time of closing plus the two installment payments totalling $301.86, in addition to the reliance expenses for cleaning, clearing, and resurveying the land for a total of $530.00, plus prejudgment interest at the rate of 9% per annum, commencing from May 13, 1981, and post-judgment interest at the statutory rate until the judgment is satisfied; and it is further

ORDERED that defendant's counterclaim be and is hereby DISMISSED; and it is further

ORDERED that plaintiff be and is hereby awarded attorney's fees and costs; and it is finally

ORDERED that plaintiff submit an affidavit of attorney's fees and costs within fifteen (15) days of execution hereof.